## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS
## KANSAS CITY DIVISION

PREMIUM NUTRITIONAL PRODUCTS, INC.,

        Plaintiff,

    v.

KAYTEE PRODUCTS INCORPORATED,

        Defendant.

Case No. 2:17-cv-2559

## COMPLAINT

This is an action for trademark counterfeiting, trademark infringement, false designation of origin, unfair competition, and trade dress infringement under the Lanham Act, 15 U.S.C. § 1051 *et seq.*, and Kansas common law, and for unjust enrichment under Kansas common law.

## Parties, Jurisdiction, and Venue

1.     Plaintiff, Premium Nutritional Products, Inc. ("Premium") is a corporation organized under the laws of Kansas, with its principal place of business at 10504 W. 79th Street, Shawnee, Kansas 66214.

2.     Upon information and belief, Defendant Kaytee Products Incorporated ("Kaytee") is a corporation organized under the laws of Wisconsin, with its principal place of business at 521 Clay Street, Chilton, Wisconsin 53014.

3.     This Court has subject-matter jurisdiction over the causes of action arising under the Lanham Act pursuant to 15 U.S.C. § 1121(a) and 28 U.S.C. §§ 1331, 1332, and 1338(a), and over the Kansas common-law cause of action pursuant to 28 U.S.C. § 1338(b) and 28 U.S.C. § 1367(a).

4.     This Court also has personal jurisdiction over Kaytee, as it is upon Premium's information and belief that Kaytee owns and operates online listings at third-party retail sites, further described below, which listings include advertisements and the ability to purchase goods at issue in the instant matter to residents of Kansas and throughout this judicial district. Thus, upon information and belief, Kaytee is subject to this Court's specific and general personal jurisdiction pursuant to due process and the Kansas long-arm statute, due to at least Kaytee's transaction of business within Kansas.

5.     Venue is proper in this district pursuant to 28 U.S.C. § 1391(b) and (c) because, upon information and belief, a substantial part of the events giving rise to the claim occurred in this judicial district and Kaytee is subject to personal jurisdiction in this judicial district.

## Premium's FruitBlend® Product and
## Associated Trademark and Trade Dress Rights

6.     Since at least as early as 1993, Premium has sold a special line of animal food products under the brand name ZuPreem®.  The ZuPreem® line includes various food products for birds, ranging from "Very Small Birds" to "Parrots & Conures."

2

7.      Since at least as early as 1995, certain of the ZuPreem ® products have been marketed under the FruitBlend® trademark.  Below is an example of Premium's product at issue bearing the ZuPreem® house mark with the FruitBlend® trademark:



8.      Premium's FruitBlend® bird food for large birds, such as parrots and conures, consists of a distinctive colorful blend of five different shapes resembling bananas, apples, grapes, melons, and oranges.  This distinctively designed FruitBlend® is known, and has been continuously known, since Premium began manufacturing, marketing, and selling it.

9.      Premium owns the following trademark registrations with the United States Patent and Trademark Office ("USPTO").

| Trademark | Goods & Services | Type | Reg. No. | Reg. Date | Date of First Use |
|---|---|---|---|---|---|
| FRUITBLEND | Bird Feed | Standard Character Mark | 4,200,811 | Sept. 4, 2012 | Oct. 13, 1995 |

| Trademark | Goods & Services | Type | Reg. No. | Reg. Date | Date of First Use |
|---|---|---|---|---|---|
|  | Bird Feed | Product Configuration Mark<br><br>"The mark consists of five individual fruit shaped configurations of bird food commingled for sale as a group."<br><br>The product configuration specifically protected under this registration consists of yellow bananas, blue grapes, red apples, green melons, and orange oranges. | 2,191,706 | Sept. 29, 1998 | Oct. 13, 1995 |

10.     The FruitBlend Standard Character Mark and the FruitBlend Product Configuration are hereafter collectively referred to as the "FruitBlend® Marks."

11.     The FruitBlend® Marks are presently valid, subsisting, and incontestable. The certificates of registration attached to this Complaint as Exhibit A and Exhibit B, respectively, are *prima facie* evidence of Premium's ownership of the FruitBlend® Marks, their validity, and Premium's exclusive right to use them in connection with the sale of the goods and services identified therein.

12.     Beginning in approximately 2009 through March 2016, Premium's FruitBlend® bird feed was packaged as shown directly below.

4



13.    The rectangular packaging shown in the preceding Paragraph 12 of this Complaint displays a distinctive trade dress, which consists of:

(i)      images of fruit across the top banner;

(ii)     placed above a bird, sitting adjacent to and slightly below stacked product identifiers "ZuPreem®" and "FruitBlend® Flavor" in prominent letters;

(iii)    "with natural fruit flavors" in less prominent letters below the product identifiers;

(iv)     a package window directly beneath the writing described in the preceding subparagraphs (ii) and (iii);

(v)      a thick red banner below said window that spans the remainder of the front side of the packaging;

(vi)     a "Made in USA" notation below said window on the left side of the packaging; and

(vii)    the product's net weight displayed below said window on the right side of the packaging (the "FruitBlend® Trade Dress").

14.     Since at least as early as April 2016 to the present, Premium's FruitBlend®
bird feed for large birds, such as parrots and conures, was and continues to be packaged as
shown directly below.



15.     The rectangular packaging shown in the preceding Paragraph 14 of this
Complaint displays the FruitBlend® Trade Dress, consisting of all original FruitBlend®
Trade Dress components with minimal subtle additions:

(i)      images of fruit across the top banner;

(ii)     placed above a bird, such as a parrot, sitting adjacent to and slightly
         below stacked product identifiers "ZuPreem®" and "FruitBlend®
         Flavor" in prominent letters;

(iii)    "with natural flavors" in less prominent letters below the product
         identifiers;

(iv)     a brief product description in even less prominent letters below that
         states: "Healthy And Delicious Nutrition For Everyday Feeding.
         Smart Pellets™ Fortified With Essential Vitamins and Minerals.";

(v)      a package window directly beneath the bird and the writing described
         in the preceding subparagraphs (ii), (iii), and (iv);

(vi)    said window outlined by a thin red banner above it and a thicker red banner below it that spans the remainder of the packaging;

(vii)   said window stamped with one circular text bubble that says "Essential Nutrition™";

(viii)  a "Made in USA" notation below said window on the left side of the packaging; and

(ix)    the product's net weight displayed below said window on the right side of the packaging (the "FruitBlend® Trade Dress").

16.    Since 1995, Premium has sold its FruitBlend® bird feed marketed under the FruitBlend® Marks through a variety of media. Premium has spent substantial time, money, and effort developing its distinctive FruitBlend® Product Configuration, and FruitBlend® Trade Dress, and the forms of advertisement and marketing, which Premium has used actively, continuously, and prominently in interstate commerce in association with its FruitBlend® bird feed marketed under the FruitBlend® Marks.

17.    By virtue of extensive sales, advertising, and promotion of FruitBlend® bird feed under the FruitBlend® Marks, Premium has acquired extensive common-law trademark rights throughout the United States that date back to at least as early as October 13, 1995.

18.    At all relevant times, Premium has continuously, actively, and prominently promoted FruitBlend® bird feed under the FruitBlend® Marks in all of its internet and print advertising, and display and promotional materials, as well as through packaging of

the FruitBlend® bird feed. Accordingly, the FruitBlend® Marks serve to identify Premium as the source of the goods and services that bear them.

19.     In approximately 2002, Premium added six new shapes to the FruitBlend® mix, consisting of red and green bananas, green and yellow apples, and red and yellow melons ("the Supplemental FruitBlend® Product Configuration").  Due to its continuous use of these shapes over 15 years, Premium owns valuable common law trademark rights in the shapes in the Supplemental FruitBlend ® Product Configuration.

<strong><u>Kaytee's Infringing and Unfair Conduct</u></strong>

20.     Upon information and belief, Kaytee markets, distributes, and sells bird feed, including a fruit-flavored blend identified with the mark "Fruit Blend" (the "Infringing Mark").  While this mark is used in connection with bird feed for small and medium birds, it is most prominently displayed to identify "Fruit Blend" bird feed for large birds, such as parrots.

21.     The bird food sold under the Infringing Mark consists of a blend of five different shapes resembling bananas, apples, grapes, melons, and oranges.  The color of these shapes mimics the color of Premium's FruitBlend® Product Configuration: (i) bananas are yellow; (ii) grapes are blue; (iii) apples are red; (iv) melons are green; and (v) oranges are orange.  Furthermore, certain shape and color combinations mimic Premium's Supplemental FruitBlend® Product Configuration: (i) bananas are also green and red; (ii) apples are also green and yellow; and (iii) melons are also red and yellow.  Kaytee's product configuration of its bird feed will hereafter be referred to as the "Infringing Product Configuration."

22.   Kaytee's Fruit Blend bird feed is sold in the packaging shown directly below.



23.   The rectangular packaging of Kaytee's Fruit Blend bird feed displays:

(i)     images of fruit along the top right side;

(ii)    placed above a parrot sitting adjacent to and slightly below stacked product identifiers "Forti-Diet" and "Fruit Blend" in prominent letters;

(iii)   above and below "Fruit Blend" are less prominent words, "Rainbow" and "Premium Daily Diet";

(iv)    a brief product description in even less prominent letters below that states: "Fortified Balanced Nutrition in Every Bite: with REAL FRUIT";

(v)     a packaging window directly beneath the parrot and the writing described in the preceding subparagraphs (ii), (iii), and (iv);

(vi)    said window outlined by a thin red banner above it and a thicker red banner below it that spans the remainder of the packaging;

(vii)   said window stamped with one circular text bubble that says "No Shells \ SEEDLESS \ No Waste";

(viii)  a "Made in the USA" notation below said window on the left side of the packaging; and

(ix)   the product's net weight displayed below said window on the right side of the packaging (the "Infringing Packaging").

24.   A true and correct copy of images of Kaytee's Parrot Fruit Blend—displaying the Infringing Mark, Infringing Product Configuration, and Infringing Packaging—is attached to this Complaint as Exhibit C.

| Premium's FruitBlend® Product Configuration | Kaytee's Infringing Product Configuration |
|---|---|
|  |  |
| Premium's FruitBlend® Marks, FruitBlend® Supplemental Product Configuration, and FruitBlend® Trade Dress | Kaytee's Infringing Mark, Infringing Product Configuration, and Infringing Packaging |

25.   In addition, Kaytee has promoted its Parrot Fruit Blend products online bearing a photograph of Premium's Product Configuration Mark and Supplemental Product Configuration Mark, instead of displaying Kaytee's actual product, as seen here:



26.     As a result of Kaytee's marketing, distribution, and sale of the above-described bird food in connection with the Infringing Mark, Infringing Product Configuration, and Infringing Packaging, consumers are likely to be confused such that consumers will erroneously believe that Kaytee is affiliated, connected, or associated with or in some way related to Premium and its FruitBlend® bird feed sold under the FruitBlend® Marks.

## COUNT 1: TRADEMARK COUNTERFEITING
### 15 U.S.C. § 1114

27.     Premium re-alleges and incorporates by reference the allegations set forth above as if fully set forth herein.

28.     Premium owns the FruitBlend® Marks and has priority rights in and to the FruitBlend® Marks that date back to at least as early as October 13, 1995.

29.     Premium has used the FruitBlend® Marks continuously and consistently for an extended period of time to identify, advertise, promote, and display its bird feed products. Premium's use of the FruitBlend® Marks in interstate commerce has indelibly impressed on the minds of the consuming public the impression that the FruitBlend® Marks identify Premium as the source of its bird feed products. Thus, the FruitBlend® Marks serve to identify Premium as the source of the goods bearing the FruitBlend® Marks because the relevant consumers have come to associate the FruitBlend® Marks with Premium.

30.     Kaytee adopted and began using the Infringing Mark and Infringing Product Configuration, as described above, long after Premium first began using the FruitBlend® Marks.

31.     Kaytee has used a spurious designation identical to Premium's FruitBlend® Standard Character Mark on the same goods covered by the federal trademark registration for Premium's FruitBlend® Standard Character Mark.

32.     Kaytee has used a spurious product configuration identical to Premium's FruitBlend® Product Configuration on the same goods covered by the federal trademark registration for Premium's FruitBlend® Product Configuration Mark.

33.     Upon information and belief, Kaytee has intentionally and willfully used its spurious designation and product configuration knowing it is counterfeit in connection with the advertising, sale, and offering for sale of goods for Kaytee's private financial gain, and such intentional and willful conduct by Kaytee makes this an exceptional case.

34.     Kaytee's use of the Infringing Mark and Infringing Product Configuration in connection with the advertising and selling of counterfeit goods constitutes Kaytee's use of the FruitBlend® Marks in commerce.

35.     Kaytee's unauthorized use of the FruitBlend® Marks as set forth above is likely to:

    a.  Cause confusion, mistake, and deception;

    b.  Cause the public to believe that Kaytee's counterfeit goods are the same as Premium's goods; that Kaytee is authorized, sponsored, or approved by Premium; and/or that Kaytee is affiliated, connected, or associated with or in some way related to Premium;

    c.  Result in Kaytee unfairly benefiting from Premium's advertising and promotion, profiting from the reputation of Premium's advertising and promotion, and/or profiting from the reputation of Premium and its FruitBlend® Marks;

all of which may cause substantial and irreparable injury to the public, Premium, and Premium's FruitBlend® Marks and the substantial goodwill represented thereby.

36.     Kaytee's acts constitute trademark counterfeiting in violation of Section 32 of the Lanham Act, 15 U.S.C. § 1114. Such conduct entitles Premium to injunctive relief pursuant to Section 34 of the Lanham Act, 15 U.S.C. § 1116, and compensatory damages, treble damages, disgorgement of profits, attorneys' fees and costs—or, at Premium's election, statutory damages of up to $2,000,000 per counterfeit mark per type of goods advertised, sold, and/or offered for sale—pursuant to Section 35 of the Lanham Act, 15 U.S.C. § 1117.

## COUNT 2: TRADEMARK INFRINGEMENT
## 15 U.S.C. § 1114

37.     Premium re-alleges and incorporates by reference the allegations set forth above as if fully set forth herein.

38.     Premium owns the FruitBlend® Marks and has priority rights in and to the FruitBlend® Marks that date back to at least as early as October 13, 1995.

39.     Premium has used the FruitBlend® Marks continuously and consistently for an extended period of time to identify, advertise, promote, and display its bird feed products. Premium's use of the FruitBlend® Marks in interstate commerce has indelibly impressed on the minds of the consuming public the impression that the FruitBlend® Marks identify Premium as the source of its bird feed products. Thus, the FruitBlend® Marks serve to identify Premium as the source of the goods bearing the FruitBlend® Marks

because the relevant consumers have come to associate the FruitBlend® Marks with Premium.

40.     Kaytee adopted and began using the Infringing Mark and Infringing Product Configuration, as described above, long after Premium first began using the FruitBlend® Marks.

41.     Kaytee's adoption and use of the Infringing Mark and Infringing Product Configuration to identify Kaytee's bird feed constitutes use of a copy and colorable imitation of Premium's FruitBlend® Marks and is likely to cause confusion or mistake, or to deceive the purchasing public into believing that Kaytee's goods emanate from the same source as the goods  provided by Premium, or that there is some connection, sponsorship, or affiliation between the goods of Premium and Kaytee—all of which are contrary to fact and are damaging and detrimental to Premium.

42.     Premium has no control over the nature and quality of Kaytee's goods. Any failure, neglect, or default by Kaytee in providing goods will reflect adversely on Premium as the believed source or origin thereof, which will hinder Premium's effort to continue to protect its outstanding reputation in the industry and subject Premium to loss of sales of goods and loss of the considerable expenditures it has made to promote its goods in association with the FruitBlend® Marks, all to the irreparable harm of Premium.

43.     Defendant's conduct constitutes an infringement of Premium's FruitBlend® Marks and is actionable under Section 32 of the Lanham Act, 15 U.S.C. § 1114.

44.     Upon information and belief, Kaytee has deliberately and willfully infringed Premium's FruitBlend® Marks in violation of 15 U.S.C. § 1114, and Premium has been

and will continue to be irreparably harmed by such infringement, unless this Court enjoins Kaytee from its continuing infringement pursuant to Section 34 of the Lanham Act, 15 U.S.C. § 1116.

45.    This is an exceptional case as a result of Kaytee's deliberate and willful infringement.

46.    Upon information and belief, Kaytee is willfully infringing Premium's FruitBlend® Marks. As a result of Kaytee's deliberate and willful infringement of Premium's FruitBlend® Marks, Premium is entitled to damages, Kaytee's profits, attorneys' fees and costs, and any and all other relief authorized by Section 35 of the Lanham Act, 15 U.S.C. § 1117.

## COUNT 3:  FEDERAL UNFAIR COMPETITION - FALSE DESIGNATION OF ORIGIN
## 15 U.S.C. § 1125

47.    Premium re-alleges and incorporates by reference the allegations set forth above as if fully set forth herein.

48.    Premium owns the FruitBlend® Marks and has priority rights in and to the FruitBlend® Marks that date back to at least as early as October 13, 1995.

49.    Premium has used the FruitBlend® Marks continuously and consistently for an extended period of time to identify, advertise, promote, and display its bird feed products. Premium's use of the FruitBlend® Marks in interstate commerce has indelibly impressed on the minds of the consuming public the impression that the FruitBlend® Marks identify Premium as the source of its bird feed products. Thus, the FruitBlend® Marks serve to identify Premium as the source of the goods bearing the FruitBlend® Marks

because the relevant consumers have come to associate the FruitBlend® Marks with Premium.

50. Kaytee adopted and began using the Infringing Mark and Infringing Product Configuration, as described above, long after Premium first began using the FruitBlend® Marks.

51. Kaytee's adoption and use of the Infringing Mark and Infringing Product Configuration to identify Kaytee's bird feed constitutes use of a copy and colorable imitation of Premium's FruitBlend® Marks and is likely to cause confusion or mistake, or to deceive the purchasing public into believing that the goods of Kaytee emanate from the same source as the goods provided by Premium, or that there is some connection, sponsorship, or affiliation between the goods of Premium and Kaytee—all of which are contrary to fact and are damaging and detrimental to Premium.

52. Kaytee's conduct, including its use of the Infringing Mark and Infringing Product Configuration on and in connection with its goods, constitutes a false designation of origin because its use of the Infringing Mark and Infringing Product Configuration in connection with Kaytee's goods is likely to cause confusion, cause mistake, or deceive others as to the affiliation, connection, or association of Kaytee with Premium, or as to the origin, sponsorship, and/or approval of Kaytee's goods and commercial activities by Premium, and therefore constitutes a violation of Section 43 of the Lanham Act, 15 U.S.C. § 1125(a).

53. Upon information and belief, Kaytee's conduct is willful and intentional with the purpose of misleading the public into believing that Kaytee's goods are in some way

sponsored by, affiliated with, or connected to Premium's goods advertised and sold under the FruitBlend® Marks, which is contrary to fact and damaging and detrimental to Premium.

54.     Premium has no control over the nature and quality of Kaytee's goods. Any failure, neglect, or default by Kaytee in providing goods will reflect adversely on Premium as the believed source or origin thereof, which will hinder Premium's effort to continue to protect its outstanding reputation in the industry and subject Premium to loss of sales of goods and loss of the considerable expenditures it has made to promote its goods in association with the FruitBlend® Marks, all to the irreparable harm of Premium.

55.     Premium has been and will continue to be irreparably harmed by such infringement, unless this Court enjoins Kaytee from its continuing infringement pursuant to Section 34 of the Lanham Act, 15 U.S.C. § 1116.

56.     Upon information and belief, Kaytee is willfully infringing Premium's FruitBlend® Marks. As a result of Kaytee's deliberate and willful infringement of Premium's FruitBlend® Marks, Premium is entitled to damages, Kaytee's profits, attorneys' fees and costs, and any and all other relief authorized by Section 35 of the Lanham Act, 15 U.S.C. § 1117.

### COUNT 4: UNFAIR COMPETITION AND TRADEMARK INFRINGEMENT
### Kansas Common Law

57.      Premium re-alleges and incorporates by reference the allegations set forth above as if fully set forth herein.

58.     Premium owns common law rights in the FruitBlend® Marks and has priority rights in and to the FruitBlend® Marks that date back to at least as early as October 13, 1995.

59.     Premium owns common law rights in the Supplemental FruitBlend® Product Configuration, and has priority rights in and to the Supplemental FruitBlend® Product Configuration that dates back to at least as early as 2002.

60.     Premium has used the FruitBlend® Marks and Supplemental FruitBlend® Product Configuration continuously and consistently for an extended period of time to identify, advertise, promote, and display its bird feed, which has indelibly impressed on the minds of the consuming public the impression that the FruitBlend® Marks Supplemental FruitBlend® Product Configuration identify Premium as the source of its bird feed.

61.     Kaytee adopted and began using the Infringing Mark and Infringing Product Configuration, as described above, long after Premium first began using the FruitBlend® Marks and Supplemental FruitBlend® Product Configuration.

62.     Kaytee's acts have created, and unless restrained by this Court, will continue to create, a likelihood of confusion and deception of the consuming public, causing irreparable injury to Premium for which Premium has no adequate remedy at law.

63.     Kaytee's conduct constitutes unfair competition under the common law of Kansas by a deliberate course of conduct, all without authorization, license, privilege, or justification.

64.     Upon information and belief, Kaytee has acted with full knowledge of Premium's rights in and use of the FruitBlend® Marks and Supplemental FruitBlend® Product Configuration, and without regard to the likelihood of confusion and deception of the public created by Kaytee's activities.

65.     Kaytee's conduct demonstrates an intentional, willful, and malicious intent to trade on the goodwill associated with Premium to the substantial and irreparable injury of Premium.

66.     As a result of Kaytee's acts, Premium has been damaged and will continue to be damaged in an amount not as yet determined or ascertainable. At a minimum, however, Premium is entitled to injunctive relief, an accounting of Kaytee's profits, actual damages, punitive damages, attorney's fees and costs, and any and all other relief authorized by law.

## COUNT 5: TRADE DRESS INFRINGEMENT
## 15 U.S.C. § 1125

67.     Premium re-alleges and incorporates by reference the allegations set forth above as if fully set forth herein.

68.     Premium is and has been the exclusive owner of the FruitBlend® Trade Dress displayed through the packaging of Premium's FruitBlend® bird feed since at least as early as 2009.

69.     The overall look and total image of the FruitBlend® Trade Dress is inherently distinctive in that the FruitBlend® Trade Dress constitutes an arbitrary and

fanciful choice of color and design that was selected by Premium to uniquely identify to the consuming public Premium as the source of FruitBlend® bird feed.

70.     The FruitBlend® Trade Dress has acquired secondary meaning in the marketplace by virtue of Premium's long, consistent, and prominent use of the FruitBlend® Trade Dress for over eight years in association with Premium's FruitBlend® bird feed.

71.     As such, the FruitBlend® Trade Dress has indelibly impressed on the consuming public's minds the impression that the FruitBlend® Trade Dress identifies Premium as the source of FruitBlend® bird feed.  Thus, the FruitBlend® Trade Dress serves to identify Premium as the source of the goods packaged in the FruitBlend® Trade Dress because the relevant consumers have come to associate the FruitBlend® Trade Dress with Premium.

72.     The overall look and total image of the FruitBlend® Trade Dress is nonfunctional in that, among other things, protection of the FruitBlend® Trade Dress would not hinder competition or impinge upon the rights of others to compete effectively in the marketplace because protection of the FruitBlend® Trade Dress does not subject any competitors to any non-reputation related disadvantage.  Indeed, the FruitBlend® Trade Dress has no functional requirement, and its use by Premium in association with Premium's goods is original, ornamental, and distinctive.

73.     Kaytee adopted and used the FruitBlend® Trade Dress after Premium began using the FruitBlend® Trade Dress.

74.     A visual inspection of Premium's bird feed bearing the FruitBlend® Trade Dress and Kaytee's Infringing Packaging demonstrates that Kaytee has selected a packaging design that is nearly identical and confusingly similar to Premium's FruitBlend® Trade Dress and, as such, is likely to cause confusion, mistake, or deception to the relevant public as to the source, sponsorship, affiliation, or approval of Kaytee's goods.  Thus, Kaytee's use of a nearly identical look for its bird feed packaging has created and will continue to create a likelihood of confusion as to the origin and source of Kaytee's goods.

75.     Upon information and belief, Kaytee's conduct is willful and intentional with the purpose of misleading the public into believing that Kaytee's goods are in some way sponsored by, affiliated with, or connected to Premium's goods advertised and sold under the FruitBlend® Trade Dress, which is contrary to fact and damaging and detrimental to Premium.

76.     Premium has no control over the nature and quality of Kaytee's goods. Any failure, neglect, or default by Kaytee in providing goods will reflect adversely on Premium as the believed source or origin thereof, which will hinder Premium's effort to continue to protect its outstanding reputation in the industry and subject Premium to loss of sales of goods and loss of the considerable expenditures it has made to promote its goods in association with the FruitBlend® Trade Dress, all to the irreparable harm of Premium.

77.     Premium has been and will continue to be irreparably harmed by such infringement, unless this Court enjoins Kaytee from its continuing infringement pursuant to Section 34 of the Lanham Act, 15 U.S.C. § 1116.

78.    Upon information and belief, Kaytee is willfully infringing Premium's FruitBlend® Trade Dress. As a result of Kaytee's deliberate and willful infringement of Premium's FruitBlend® Trade Dress, Premium is entitled to damages, Kaytee's profits, attorneys' fees and costs, and any and all other relief authorized by Section 35 of the Lanham Act, 15 U.S.C. § 1117.

## COUNT 6: UNJUST ENRICHMENT
### 17 U.S.C. § 501 *et seq.*

79.    Premium re-alleges and incorporates by reference the allegations set forth above as if fully set forth herein.

80.    Kaytee has taken, without compensation to Premium, substantial benefits from Premium through its use of the Infringing Mark, Infringing Product Configuration, and Infringing Packaging, which must equitably be returned to Premium.

81.    These benefits include, but are not limited to sales made by Kaytee from Premium customers as a result of the manufacturing, marketing, and sale of a competing product line which uses Premium's well-known and already-developed proprietary trademarks and trade dress, without justification or authorization.

82.    As a result of Kaytee's acts and omissions, Premium has sustained and will continue to sustain irreparable harm.

83.    Upon information and belief, Kaytee's conduct has been intentional, deliberate, willful, malicious, and motivated by a specific intent to damage Premium's business for Kaytee's personal gain.

## **Prayer for Relief**

Based on the above allegations, Premium demands a judgment against Kaytee and prays that the Court:

1.    Enter an Order preliminarily and permanently enjoining and restraining Kaytee, including Kaytee's officers, directors, employees, agents, successors, assigns, and all those acting for, with, by, through, or under Kaytee, from:

    a.   Counterfeiting Premium's goods by using a spurious designation and configuration that is identical to, or substantially indistinguishable from, Premium's FruitBlend® Marks on goods covered by the registrations for the FruitBlend® Marks;

    b.   Using the Infringing Mark, Infringing Product Configuration, or Infringing Packaging without license, privilege, or justification to identify Kaytee's goods, causing confusion or mistake, and deceiving the purchasing public into believing that the goods of Kaytee emanate from the same source as the goods provided by Premium, or that there is some connection, sponsorship, affiliation, or association between Premium and Kaytee and/or their respective goods and commercial activities; and

    c.   Otherwise infringing Premium's FruitBlend® Marks and/or Premium's FruitBlend® Trade Dress.

2.      Direct that Kaytee destroys, and certifies the destruction of, all products, advertisements, and promotional and other materials in its possession or under its control:

  a.  Bearing the Infringing Mark or consisting of the Infringing Product Configuration, or any simulation, reproduction, counterfeit, copy, or colorable imitation of the FruitBlend® Marks pursuant to 15 U.S.C. § 1118; or

  b.  Bearing the Infringing Packaging or any simulation, reproduction, counterfeit, copy, or colorable imitation of Premium's FruitBlend® Trade Dress.

3.      Award Premium, should Premium so elect, an award of statutory damages pursuant to 15 U.S.C. § 1117(c) of up to $2,000,000 for each counterfeit mark for each type of good and service Kaytee has willfully counterfeited and infringed.

4.      Direct that Kaytee accounts for and relinquishes to Premium all gains, profits, and advantages derived through the infringement of Premium's FruitBlend® Marks and/or Premium's FruitBlend® Trade Dress and/or Premium's Supplemental FruitBlend® Product Configuration.

5.      Award Premium such damages as Premium has sustained as a consequence of Kaytee's infringement of Premium's FruitBlend® Marks and/or Premium's FruitBlend® Trade Dress and/or Premium's Supplemental FruitBlend® Product Configuration, including but not limited to compensatory damages, including disgorgement of Kaytee's profits; full costs; treble damages; and reasonable attorney's fees in accordance with 15 U.S.C. §§ 1117 and 1125(a) and 17 U.S.C. §§ 504 and 505.

6.      Award to Premium such other costs and further relief as the Court may deem just and proper, including but not limited to prejudgment and post-judgment interest.

### Jury Demand

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Premium Nutritional demands a trial by jury.

Dated: September 22, 2017

Respectfully Submitted,

s/ ***Cheryl L. Burbach***

Cheryl L. Burbach, KS State Bar No. 23592
  cburbach@hoveywilliams.com
Joan O. Herman, KS State Bar No. 13578
  joh@hoveywilliams.com
C. Blair Barbieri, KS State Bar No. 27090
  bbarbieri@hoveywilliams.com
HOVEY WILLIAMS LLP
10801 Mastin Boulevard, Suite 1000
Overland Park, Kansas 66210
(913) 647-9050   Fax: (913) 647-9057

ATTORNEYS FOR PLAINTIFF